**MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Deborah Wells LEACH and James L. Leach and Lois H. Leach, Administrators of the Estate of Robert L. Leach, Defendants.**

**Civ. A. No. 88–2358.**

United States District Court, District of Columbia.

June 8, 1989.

John C. Kenney, Jr., Wendy L. Wysong and Steven J. Routh, Washington, D.C., for Minnesota Mut. Life Ins. Co.

Daniel E. Toomey and Christina Eads Clearwater, Vienna, Va., for defendant Deborah Wells Leach.

James E. Anderson, John J. Kelly and Andrew J. Kameros, Washington, D.C., for

---

James L. Leach and Lois H. Leach Administrators of the Estate of Robert L. Leach.

## MEMORANDUM

GESELL, District Judge.

This is an interpleader action initiated by Minnesota Mutual Life Insurance Company ("MML") which comes before the Court on fully documented cross-motions for summary judgment filed by the defendants, who are conflicting claimants to the policy proceeds now on deposit in the Registry of the Court. The controversy has been fully briefed and argued.

Robert L. Leach II and Deborah Leach were married in 1967, and in 1979 they purchased a home in Kenwood, Maryland. In 1988 MML issued them a joint Group Mortgage Life insurance policy obligating MML to pay the balance of the mortgage to Perpetual American Bank in the event of the death of either Robert or Deborah Leach, and providing that any balance would be paid to the "surviving wife" in the event the husband died first. The policy provision reads as follows:

**DEATH BENEFIT**

**What happens upon the death of a jointly insured debtor?**

Subject to the terms of the group policy, the death benefit for the first joint insured to die will be paid.

If the jointly insured debtors are married and the wife is the first joint insured to die or if the jointly insured debtors are unmarried, the group insurance on the life of the surviving joint insured will be automatically converted to an individual policy of decreasing term insurance ...

If the jointly insured debtors are married and the husband is the first joint insured to die, the group insurance on the life of the surviving wife will be automatically converted to a survivor's benefit and will be paid immediately on behalf of the surviving wife ...

Another provision reads:

**To whom will we pay the death proceeds?**

We will pay the death proceeds to the lender to be used to reduce or extinguish your loan. Any remaining proceeds will be payable to a beneficiary named by you, or to your estate if no beneficiary has been named ...

When a survivor's benefit is also payable, we will pay the survivor's benefit to the lender to reduce or extinguish any amount still remaining on the loan. Any remaining proceeds will be payable to the surviving wife.

Later, while the policy was still in effect, the Leaches separated under a voluntary formal agreement in 1984 and were promptly divorced. As part of the separation agreement, Robert conveyed "all of his right, title and interest" in their jointly owned Maryland home to Deborah. The agreement[1] provided:

11. *Residence.* The parties are joint owners of certain real property located at 6411 Brookside Drive Chevy Chase, Maryland. As soon as is practicable after the execution of this Agreement, the husband shall convey all of his right, title and interest to said real property to Deborah.

The wife, in turn, shall indemnify and hold harmless the husband from any and all expenses relating to said property, including the mortgage, interest, taxes and insurance, repairs and maintenance on said property.

The husband shall use his best efforts to ensure that the present first deed of trust shall be maintained despite the transfer of his interest to the wife.

The separation agreement explicitly provided for the maintenance of Robert's disability and health insurance, and another life insurance policy, but made no other mention of the MML policy on the home.

Deborah thereafter lived in the house, had custody of the children, and continued the policy by paying the premiums. The mortgage was paid off in December 1986

---

**1.** Separation and Property Settlement Agreement executed by and between Robert L. Leach,

II and Deborah W. Leach, October 19, 1984.

when Deborah sold the house and moved to a house on Reservoir Road in Washington, D.C. Deborah wanted to continue the policy coverage on the Reservoir Road home and upon learning from MML that this could be done under a change of beneficiary form, she filed such a completed form in her own name only in January 1987. Shortly thereafter Robert died, on March 23, 1987. He had not remarried.

When a dispute developed between Robert's estate, which claimed the policy proceeds, and Deborah, who insisted upon her rights under the change of beneficiary arrangement, MML paid the proceeds, approximately $180,000, into the Registry of the Court after filing this interpleader complaint in this case.

By the time the summary judgment motions were argued, the parties did not dispute that the policy continued in effect after the Maryland house was sold.[2] The sale would seem to have triggered a termination of the insurance, as the policy provided that "The insurance on your life will terminate on the earliest of: (1) the date your loan is paid in full;.." Under this provision, Perpetual American was no longer a beneficiary. The ownership rights of the policy continued, however, because not all the provisions for winding up had occurred and the parties had the option to receive continued insurance under an "individual decreasing term life insurance policy," although the policy did not specify exactly how this was to be effected.

When Deborah sought in 1987 to transfer coverage to the Reservoir Road house, MML sent a change of beneficiary form to her, which she executed. She asked that it be continued in both of their names, designating United Savings Bank, the holder of the Reservoir Road mortgage, as the new beneficiary. Robert did not execute any form.

After Robert died, Deborah again contacted MML, requesting appropriate claim forms. By this time, MML was aware of the divorce, and MML advised Deborah that it wished to examine the divorce documents to determine, among other things, whether they designated "ownership of the policy" to Deborah. The policy did not provide for the respective rights of husband and wife in the event of their formal separation and divorce while the policy was in effect and did not request notification in the event of divorce or separation.

Because both insured debtors had not effected a mutually agreed designation of a beneficiary, MML lawyers eventually reached the view that there was no surviving wife, no new beneficiary had been named after Perpetual American's loan was paid, and that therefore the remaining proceeds should be paid to the estate of the husband. That is, MML focused on an event which the policy did identify, namely, death of the male insured, ignoring all intervening events that could not fit easily within its scanty policy provisions. This approach ignored the realities of what had taken place as well as the realities of modern society where divorce can hardly be deemed an unexpected contingency.

Thus, the issue before the Court is whether, viewing all the facts and circumstances it appears that, although he did not do so expressly, Robert in fact at the time of formal separation shifted ownership of the policy to his wife by an assignment of his entire interest in the policy, thereby making Deborah the sole owner of the policy and her single designation of beneficiary effective.

Clearly the policy itself is riddled with ambiguities, and the Court cannot rely on traditional contract principles and simply construe these ambiguities against MML, as the contest in the case is between the estate and Deborah Leach—not MML. No case with identical facts has been cited, but the underlying principle is well established. The Court must look to the intent of the contracting parties, and the apparent requirements of a policy—that the proceeds should go to the estate—must give way to equity in order to carry out an insured's manifest intent where contingencies unanticipated by the policy arise. *See, Zachary*

---

2. *See also,* The Estate's Memorandum to the Court, May 31, 1989 and Deborah Wells Leach's Comments In Response to the Estate's Memorandum to the Court, June 5, 1989.

*v. Security Life and Trust Co.,* 4 N.C.App. 221, 166 S.E.2d 495 (1969).

Deborah has the burden of proving Robert's intent by clear and convincing evidence. She has satisfied this requirement. Robert obviously intended to place full interest in the Maryland house in Deborah's hands at the time of the separation. The policy represented part of the mortgage interest in and insurance on the house. She was required to pay the premiums after he no longer had any interest in the house. It is obvious from the separation agreement that Deborah was to have the sole interest in the policy. It went with the house. The terms of the separation agreement make this clear. The papers regarding the policy were kept with the other papers regarding the house, and, as in the separation agreement, in all the thorough provisions of Robert's Will and Testament executed in January 1987, he dealt specifically with various other insurance policies but the contested policy was never mentioned.[3]

His death could have defeated his purpose under MML's interpretation of the policy if the benefits were to go to his estate, and not to Deborah or to Deborah's designated beneficiary. Indeed, his death was not the crucial event in the case, and Deborah Leach does not collect as a surviving spouse. The sale of the Kenwood home triggered an option for her—as the sole person with an interest in the home—to continue the policy on her new house by designating a new beneficiary, which she was attempting to do when Robert died.

The Court holds that there was an equitable assignment of all Robert's rights under the policy to Deborah, that she was intended to be the sole beneficiary and that the proceeds of the policy on deposit in the Registry of the Court shall be released to her. *See, Waters v. Kopp,* 34 App.D.C. 575 (1910), *appeal dismissed,* 223 U.S. 746, 32 S.Ct. 533, 56 L.Ed. 640. (Court found assignment of benefits of life insurance policy to daughter, who had kept up payments on the policy, despite language of policy).

Following submission of the summary judgment papers, the Court indicated certain further information might be helpful, and able counsel made thorough inquiry into several issues. It still cannot be determined with 100% certainty after careful investigation whether or not Robert was sent a change of beneficiary form, whether or not he received it, and, if he did receive it, whether or not he was consciously and with full awareness taking a position by not signing the form.[4] The Court has been assisted by affidavits filed on these issues, but uncertainties remain. Neither counsel in subsequently arguing the cross-motions suggested any possibility of resolving missing facts by further discovery or trial. Both the estate and Deborah Leach indicated that they desired the Court to resolve the matter on the existing record, for economic and other reasons.

Regardless of the representations of the parties or the likelihood of further factual development at trial, the Court is satisfied on the uncontested facts before it that Robert's actions at the time of the separation establish by clear and convincing evidence that he did not seek to retain any further interest in the policy and that he relinquished any residual right under the policy when he transferred all his right, title and interest in the Maryland house to Deborah.

The Court's equitable result is fortified by the fact that Deborah unquestionably had rights under the policy. Contrary to the protestations of the estate, the "surviving spouse" was Deborah, because she was the spouse when the policy was taken out. *See, Novern v. John Hancock Mutual Life Insurance Co.,* 107 N.W.Super. 570, 259 A.2d 504 (L.1969). Robert never took any action after the divorce to divest her of rights as a surviving spouse, *see, Williams v. Sistare,* 36 Conn.Sup. 252, 417 A.2d 369 (1980), and the named beneficiary in a life

---

**3.** While Mr. Leach did not need to mention the insurance policy in the will because it is a contract with the insurance company and thus should not need to be probated, this explanation for the policy's absence from the will is not complete for the reasons discussed above.

**4.** *See* defendants' Responses to the Court's Specific Inquiries, filed May 22 and May 25, 1989.

insurance policy has a vested interest in it subject to a divestiture by an insured during insured's lifetime.

An appropriate Order granting summary judgment to Deborah Wells Leach is attached.